UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| RONALD PATRICK CAMERON TRUST Dated February 5, 1996, and RPC VENTURES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> WARREN LAW GROUP, SCARINCI & HOLLENBECK, LLC, SCOTT J. OH, and CHRISTOPHER D. WARREN, <br><br> Defendants. | Civil Action No. <br><br> **JURY TRIAL DEMANDED** |

---

# COMPLAINT

Plaintiffs, the Ronald Patrick Cameron Trust, dated February 5, 1996 ("RPCT") and RPC Ventures, LLC ("RPCV") (collectively, "Plaintiffs"), by their attorneys, Phillips Lytle LLP for their Complaint against defendants, Warren Law Group, Scarinci & Hollenbeck, LLC ("Scarinci Hollenbeck"), Scott J. Oh, and Christopher D. Warren (collectively, "Defendants"), allege upon information and belief:

## PRELIMINARY STATEMNT

1. Plaintiffs deposited $20 million with Defendants, relying on Defendants' representations that the funds were locked in their trust account and would not get disbursed except back to Plaintiffs. Unbeknownst to Plaintiffs and in direct violation of the parties' agreements, Defendants transferred the money elsewhere, including to an individual associated with a broader criminal scheme to defraud investors. Despite Plaintiffs' repeated demands for information, Defendants have failed to explain the

disposition of the funds and, instead, have provided false and inconsistent information. Defendants' misconduct caused Plaintiffs to suffer damages of no less than $20 million.

## PARTIES

2. Plaintiff RPCT is a trust duly formed under the laws of Arkansas and has a principal place of business in Arkansas.

3. Plaintiff RPCV is an Arkansas limited liability company with its principal place of business in Arkansas.

4. Defendant Warren Law Group is a New Jersey corporation with its principal place of business in New York, New York.

5. Defendant Scarinci Hollenbeck is a New Jersey professional service limited liability company with a principal place of business in New York, New York.

6. Upon information and belief, Warren Law Group was acquired by or merged with Defendant Scarinci Hollenbeck on or around January 1, 2024. Scarinci Hollenbeck is the successor to Warren Law Group.

7. Defendant Christopher D. Warren is a citizen and resident of New Jersey. He is an attorney admitted to practice in the State of New York, and at all relevant times maintained a place of business in New York, New York. He was the managing partner of Warren Law Group and became a partner of Scarinci Hollenbeck.

8. Defendant Scott J. Oh, Esq. is a citizen and resident of Illinois. He is an attorney admitted to practice in the State of Illinois, and at all relevant times maintained a place of business in New York, New York. He was a partner at Warren Law Group and of counsel at Scarinci Hollenbeck.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this controversy based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the sum specified by 28 U.S.C § 1332, exclusive of interest and costs.

10. Venue is proper under 28 U.S.C. § 1393 because a substantial part of the events or omissions giving rise to the claim occurred in this District. Among other things, Plaintiffs deposited $20 million into a bank account located in this District and belonging to a law firm in this District.

## FACTUAL BACKGROUND

**A.    The Underlying Transaction**

11. Plaintiffs' deposit of $20 million into Defendants' trust account was supposed to facilitate a business loan involving certain nonparties Varsity Financial Holdings ("Varsity") and Versity Invest LLC ("Versity").

12. In October 2023, Varsity and Versity entered into two Business Expansion Line of Credit Agreements effective October 14, 2023, and October 17, 2023, respectively (the "BELOCs") with a number of other entities and individuals.

13. Each of the BELOCs required Versity, or a third party on its behalf ("Depositing Third Party"), to deposit $10 million (the "ICA Payments") into a dedicated account.

14. Each of the BELOCs then required Varsity to advance an asset backed line of credit loan to Versity in the amount of $100 million (or $200 million total) within 90 to 120 International Banking Days from the deposit of the ICA Payments.

15. Since there were two BELOCs, the total ICA Payments owed by Versity—or its Depositing Third Party—were $20 million and the total amount to be advanced by Varsity to Versity was $200 million.

16. The ICA Payments were to be held in an account subject to two Non-Depletion Agreements (the "NDAs"). Pursuant to Paragraph 6 of the NDAs, the account was to be "locked for the transaction period and there shall be *no* payments, disbursements or withdrawals from the Account until . . . after the first Advance under the [BELOCs] is made" (emphasis added). The NDAs are attached as **Exhibits A and B**.

17. Paragraph 4 of the NDAs provided that, "Until the first Advance is made, any party to this Agreement may request from the escrow agent verification that the funds deposited remain in the Account" and "[e]scrow agent shall provide [v]erification to the requesting party within ten business banking days."

18. RPCV agreed to serve as the Depositing Third Party and advance the ICA Payments in exchange for interest to be paid to it by Versity.

19. RPCV executed a Consent to Be Bound, in which it agreed to be bound to the NDAs.

20. RPCV also entered into two Deposit Agreements with Versity, effective October 13, 2023, and October 17, 2023, respectively (the "Deposit Agreements"). Pursuant to the Deposit Agreements, RPCV agreed to be Versity's Depositing Third Party and undertook the obligation to make the ICA Payments required under the BELOCs.

**B.     The Escrow Agreements**

21. In connection with making the ICA Payments under the NDAs and the BELOCs, RPCV and Versity entered into two Escrow Service Agreements with

Defendant Warren Law Group, represented by Defendant Scott J. Oh, effective October 14, 2023, and October 17, 2023, respectively (the "Escrow Service Agreements"). Copies of the Escrow Service Agreements are attached as **Exhibits C and D**.

22. The Escrow Service Agreements appointed Warren Law Group, represented by Mr. Oh, as the escrow agent to facilitate the transactions outlined in those agreements (the "Escrow Agent").

23. Among other things, the Escrow Service Agreements also annex the respective BELOCs (including the NDAs) and specifically provide that the Escrow Agent was to perform its escrow obligations and duties in accordance with those underlying agreements.

24. Paragraph I(2)(a) of each Escrow Service Agreement provides that Warren Law Group shall use its Interest on Lawyers' Trust Account ("IOLTA") "to accept in escrow funds" of $10 million and to "disburse the escrowed funds to the designated custodian pursuant to, and in strict accordance with, the Letter(s) of Direction issued by Versity subject to the terms, conditions, and provisions of the Transaction Contract."

25. Annex B of the Escrow Service Agreements designated Warren Law Group's IOLTA, located at J.P Morgan Chase Bank, N.A. in New York, New York, as the Account to receive the two payments of $10 million each.

C. **Defendants' Misconduct**

26. Prior to RPCV entering into the Escrow Services Agreement and depositing funds in the IOLTA, Warren Law Group and Mr. Oh did not disclose to Plaintiffs that they had a separate relationship with one James William Byrd, nor did they disclose that they intended to transfer such funds to Mr. Byrd and/or his associates.

27. On or around October 16, 2024, RPCT deposited $10 million into Warren Law Group's IOLTA.

28. On or around October 19, 2024, RPCT deposited another $10 million into Warren Law Group's IOLTA.

29. In depositing a total of $20 million (the "Funds") into the IOLTA, Plaintiffs satisfied the BELOCs' requirement for Varsity to disburse the Advances to Versity.

30. However, Varsity never made any Advance as required under the BELOCs and thus, there should have been no payments, disbursements or withdrawals from the IOLTA pursuant to the NDAs.

31. Additionally, upon information and belief, Versity never issued a Letter of Direction to the Escrow Agent directing disbursement of the Funds.

32. In addition, since no Advance was ever made, any such Letter of Direction would have violated the terms of the NDA, which required the Funds to be held until the first Advance was made.

33. Nevertheless, the Funds are not presently in the IOLTA, and Plaintiffs have been trying to determine for some time what Defendants did with them.

34. On or about January 19, 2024, Mr. Oh provided two so-called letters of attestation, one for each of the BELOCs, on the letterhead of Scarinci Hollenbeck. Mr. Oh attested, with respect to each loan, and under penalties of perjury, that "as of January 17, 2024 . . . the Interest Reserve Account held at J.P. Morgan Chase Bank has funds in the amount of Ten Million Dollars ($10,000,000.00)." Copies of the letters of attestation are attached as **Exhibits E and F**.

35. Upon information and belief, the statement by Mr. Oh was a material misstatement or otherwise failed to disclose the material fact that the Funds were not, in fact, held in an appropriate account.

36. On or about April 25, 2024, counsel for Varsity, T. Aaron Stringer, signed a so-called letter of attestation, also under penalties of perjury, stating that the Funds were in an "account held for and on behalf of Varsity." The letter does not provide details about the account where the Funds were being held. Mr. Stringer's letter of attestation is attached as **Exhibit G**.

37. On May 3, 2024, Mr. Oh informed Plaintiffs' principal and others he had terminated his association with Scarinci Hollenbeck the week before. He also issued another purported letter of attestation stating, again under penalties of perjury, that the Funds were held in "a financial trade account held for and on behalf of Varsity." This letter of attestation is attached as **Exhibit H**.

38. In addition, Mr. Oh informed Plaintiffs' counsel in a telephone call that the Funds were transferred into an account associated with Varsity.

39. Despite Plaintiffs' repeated requests, Defendants never provided details about what happened to the Funds. They have never confirmed whether or when the Funds were transferred or whether the Funds were, in fact, held by Varsity. No wire or transfer information was provided relating to the Funds. Instead, Defendants repeatedly evaded Plaintiffs' inquiries, stringing Plaintiffs along.

40. In July and August 2024, Plaintiffs' counsel Seth Haines spoke to and corresponded with Fred D. Zemel, a partner at Scarinci Hollenbeck, regarding the Funds. Mr. Zemel conceded that Mr. Oh joined Scarinci Hollenbeck along with other attorneys

from Warren Law Group. But Mr. Zemel was unable or unwilling to provide any details regarding the Funds or the IOLTA. Mr. Zemel's email is attached as **Exhibit I.**

41. On or about August 6, 2024, Defendant Christoper Warren spoke to Plaintiffs' counsel Seth Haines and stated that the Funds had been transferred to an entity called Velanos Principal Capital.

42. However, on a subsequent phone call, Mr. Warren stated to Mr. Haines that the Funds had not been transferred to Velanos, but instead to some other entity.

43. Eventually, Plaintiffs learned that the Funds were likely transferred to an account held by Mr. Byrd and/or his associates.

44. On or about September 23, 2024, the principals for Versity and RPCT met with Mr. Byrd via video call.

45. In the meeting, Mr. Byrd would not confirm any details about the Funds' whereabouts but indicated he had an agreement with Varsity to manage and/or trade with the Funds—an agreement that was never contemplated by Plaintiffs or under the BELOCs. Mr. Byrd indicated that he was in control of the Funds, which were not being held in the IOLTA specified in the Escrow Services Agreements.

46. On November 25, 2024, the principals for Versity and RPCT again met with Mr. Byrd, this time in Versity's offices in California. In that meeting, Mr. Byrd stated that the Funds were still accessible but continued to be evasive when asked where the Funds were.

47. During the meeting, Mr. Byrd had a sudden medical episode, began seizing, and died, to the shock of everyone present. Mr. Byrd left his laptop computer open on the table in the conference room. The lock screen of his computer said, "If FOUND,

PLEASE RETURN TO: Law Offices of Scott J. Oh." A photograph of Mr. Byrd's laptop's lock screen is below.



48. Mr. Oh later admitted that he was assisting Mr. Byrd with legal issues, which he claimed are unrelated to the current transaction.

49. Due to Defendants' misconduct, Plaintiffs suffered damages in an amount not less than $20 million plus interest, and costs and expenses in recovering its Funds.

## FIRST CLAIM

## BREACH OF CONTRACT

50. Plaintiffs repeat each of the foregoing allegations as if fully set forth herein.

51. The Escrow Service Agreements are valid and enforceable written agreements between RPCV and Warren Law Group, which later merged into Scarinci Hollenbeck.

52. Plaintiffs have fully performed under the Escrow Service Agreements.

53. As described herein, Defendants Warren Law Group and Scarinci Hollenbeck breached the Escrow Service Agreements by transferring the Funds without proper direction.

54. Due to Defendants' breach of the Escrow Service Agreements, Plaintiffs suffered damages in an amount to be proven at trial but not less than $20 million, plus interest.

## SECOND CLAIM

## NEGLIGENCE

55. Plaintiffs repeat each of the foregoing allegations as if fully set forth herein.

56. Defendants owed a duty to Plaintiffs to act as a reasonably prudent escrow agent would act.

57. As described herein, Defendants breached their duties by, *inter alia*, failing to retain the Funds, transferring the Funds without proper direction, withholding information from Plaintiffs about the whereabouts of the Funds, and providing false, misleading, or incomplete information about the whereabouts of the Funds.

58. Due to Defendants' actions, Plaintiffs suffered damages in an amount to be proven at trial but not less than $20 million, plus interest.

59. The actions complained of herein were taken willfully and wantonly such that the imposition of punitive damages is warranted.

## THIRD CLAIM

## BREACH OF FIDUCIARY DUTY

60. Plaintiffs repeat each of the foregoing allegations as if fully set forth herein.

61. Defendants were fiduciaries of RPCV as Escrow Agent under the Escrow Service Agreements and because Plaintiffs trusted and relied upon Defendants to manage the Funds placed in the IOLTA.

62. As described herein, Defendants breached their fiduciary obligations by, *inter alia*, failing to retain the Funds, transferring the Funds without proper direction, withholding information from Plaintiffs about the whereabouts of the Funds, and providing false, misleading, or incomplete information about the whereabouts of the Funds.

63. Due to Defendants' breach of their fiduciary duties, Plaintiffs suffered damages in an amount to be proven at trial but not less than $20 million, plus interest.

64. The actions complained of herein were taken willfully and wantonly such that the imposition of punitive damages is warranted.

## FOURTH CLAIM

## CONVERSION

65. Plaintiffs repeat each of the foregoing allegations as if fully set forth herein.

66. Plaintiffs provided the Funds to Defendant Warren Law Group, which subsequently merged into Scarinci Hollenbeck.

67. Instead of retaining the Funds, Defendants Warren Law Group and Scarinci Hollenbeck transferred the Funds without authorization.

68. Defendants Warren Law Group and Scarinci Hollenbeck converted the Funds.

69. Plaintiffs demand that Defendants return to Plaintiffs the converted funds in the amount of $20 million, with interest.

70. The actions complained of herein were taken willfully and wantonly such that the imposition of punitive damages is warranted.

## FIFTH CLAIM

## FRAUD

71. Plaintiffs repeat each of the foregoing allegations as if fully set forth herein.

72. Defendants had a fiduciary and/or confidential relationship with Plaintiffs as Escrow Agent under the Escrow Service Agreements and because Plaintiffs trusted and relied upon Defendants to manage the Funds placed in the IOLTA, and as such, Defendants had an obligation to disclose material information to Plaintiffs.

73. Defendants failed to disclose material information to Plaintiffs, namely, that Warren Law Group and Mr. Oh had a separate relationship with Mr. Byrd, and that they intended to transfer the Funds to Mr. Byrd and/or his associates.

74. Defendants, by their omissions, received Funds from Plaintiffs and used them not as they represented they would, but for other purposes.

75. Defendants transferred the Funds without Plaintiffs' authorization while misrepresenting or withholding information about where the Funds went.

76. Upon Plaintiffs' inquiries, Defendants gave Plaintiffs false and inconsistent information about where the Funds were to delay or mislead Plaintiffs in their efforts to obtain the Funds.

77. Due to Defendants' fraud, Plaintiffs suffered damages in an amount to be proven at trial but not less than $20 million, plus interest.

78. The actions complained of herein were taken willfully and wantonly such that the imposition of punitive damages is warranted.

## SIXTH CLAIM

## NEGLIGENT MISREPRESENTATION

79. Plaintiffs repeat each of the foregoing allegations as if fully set forth herein.

80. Defendants had a fiduciary and/or confidential relationship with Plaintiffs as Escrow Agent under the Escrow Service Agreements and because Plaintiffs trusted and relied upon Defendants to manage the Funds placed in the IOLTA, and as such, Defendants had an obligation to disclose material information to Plaintiffs.

81. Defendants failed to disclose material information to Plaintiffs, namely, that Warren Law Group and Mr. Oh had a separate relationship with Mr. Byrd, and that they intended to transfer the Funds to Mr. Byrd and/or his associates.

82. Defendants negligently misrepresented to Plaintiffs that the Funds would be retained or distributed in strict accordance with Plaintiffs' authorization.

83. In reliance of Defendants' misrepresentation, Plaintiffs entered into the Escrow Service Agreements and deposited in Defendants' Account $20 million.

84. Defendants, by their misrepresentations, received Funds from Plaintiffs and used them not as they represented they would, but for other purposes.

85. Upon receipt of the Funds, Defendants transferred the Funds without Plaintiffs' authorization while negligently failing to disclose information about where the Funds went.

86. Upon Plaintiffs' inquiries, Defendants negligently gave Plaintiffs false and inconsistent information about where the Funds were.

87. Due to Defendants' negligent misrepresentation, Plaintiffs suffered damages in an amount to be proven at trial but not less than $20 million, plus interest.

88. The actions complained of herein were taken willfully and wantonly such that the imposition of punitive damages is warranted.

## SEVENTH CLAIM

### MONEY HAD AND RECEIVED

89. Plaintiffs repeat each of the foregoing allegations as if fully set forth herein.

90. Defendant Warren Law Group, which subsequently merged into Scarinci Hollenbeck, received the Funds from Plaintiffs.

91. Defendants Warren Law Group and Scarinci Hollenbeck benefited from the receipt of the Funds.

92. It would be against equity and good conscience to permit Defendants Warren Law Group and Scarinci Hollenbeck to retain the Funds, which are $20 million, and Plaintiffs are entitled to Judgment in the amount of $20 million, plus interest as provided by law.

93. The actions complained of herein were taken willfully and wantonly such that the imposition of punitive damages is warranted.

## EIGHTH CLAIM

## UNJUST ENRICHMENT

94. Plaintiffs repeat each of the foregoing allegations as if fully set forth herein.

95. Defendants received and retained a benefit from Plaintiffs in the amount of $20 million.

96. It would be inequitable and unjust for Defendants to retain the benefit without compensating Plaintiffs.

97. Defendants have been unjustly enriched at Plaintiff's expense in an amount to be determined at trial but not less than $20 million, plus interest.

## NINTH CLAIM

## BREACH OF THE IMPLIED COVENANTS OF
## GOOD FAITH AND FAIR DEALING

98. Plaintiffs repeat each of the foregoing allegations as if fully set forth herein.

99. The Escrow Service Agreements each contain an implicit covenant of good faith and fair dealing.

100. As described herein, Defendants Warren Law Group and Scarinci Hollenbeck breached those covenants and acted to deprive RPCV of the benefits of the Escrow Service Agreements.

101. Due to Defendants' breach of good faith and fair dealing, Plaintiffs suffered damages in an amount to be proven at trial but not less than $20 million, plus interest.

102. The actions complained of herein were taken willfully and wantonly such that the imposition of punitive damages is warranted.

## TENTH CLAIM

## ACCOUNTING

103. Plaintiffs repeat each of the foregoing allegations as if fully set forth herein.

104. Plaintiffs and Defendants had a fiduciary relationship.

105. Plaintiffs have repeatedly requested Defendants provide information and/or records about the Funds, but Defendants have failed to provide information and/or records, or have provided Plaintiffs with false information.

106. Plaintiffs have no adequate remedy at law in this regard.

107. By reason of the foregoing, Plaintiffs are entitled to an accounting of the total amount received by Defendants from Plaintiffs for the period of October 16, 2023 to present.

108. Plaintiffs are entitled to a surcharge against Defendants upon the accounting, plus interest as provided by law.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, as follows:

a. For all actual damages caused by Defendants' actions in an amount to be determined at trial, but not less than $20,000,000, plus interest, attorneys' fees, and costs and disbursements as provided by law;

b. For punitive damages;

c. Directing Defendants to account for the total amount received by Defendants from Plaintiffs for the period of October 16, 2023 to present, with a surcharge against Defendants and the return of Plaintiffs' Funds, plus interest, attorneys' fees, costs and disbursements as provided by law; and

d. For such other and further relief as the Court deems just and proper.

Dated: Buffalo, New York
October 16, 2025

PHILLIPS LYTLE LLP

By: /s/ Jeremy M. Amar-Dolan
Tristan D. Hujer
Jeremy M. Amar-Dolan
Attorneys for Plaintiffs
*Ronald Patrick Cameron Trust,
dated February 5, 1996 and
RPC Ventures, LLC*
620 Eighth Avenue, 38th Floor
New York, New York 10018
Telephone No. (212) 759-4888
thujer@phillipslytle.com
jamar-dolan@phillipslytle.com

RMP LLP
Seth Haines (*pro hac vice* forthcoming)
5519 Hackett Street, Suite 300
Springdale, Arkansas 72762
Telephone No. (479) 443-2705
shaines@rmp.law