UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RONALD PATRICK CAMERON TRUST
Dated February 5, 1996, and RPC VENTURES, LLC,

Plaintiffs,

-against-

WARREN LAW GROUP, LLP, WARREN LAW GROUP, PLLC, CHRISTOPHER D. WARREN, P.C., SCARINCI & HOLLENBECK, LLC, SCOTT J. OH, and CHRISTOPHER D. WARREN,

Defendants.
-------------------------------------------------------------------X

Case No. 1:25-cv-08583-PAE

**ANSWER TO SECOND AMENDED COMPLAINT WITH COUNTERCLAIMS**

Defendants, WARREN LAW GROUP, LLP, WARREN LAW GROUP, PLLC, CHRISTOPHER D. WARREN, P.C. ("CDW PC"), SCOTT J. OH, and CHRISTOPHER D. WARREN ("WLG Defendants"), by and through their attorneys, Kaufman Dolowich LLP, as and for their Answer to the Second Amended Complaint of Plaintiffs RONALD PATRICK CAMERON TRUST DATED FEBRUARY 5, 1996 (the "Trust") and RPC VENTURES, LLC ("RPCV") (together, "Plaintiffs"), dated January 16, 2026 ("Second Amended Complaint"), and as their Counterclaims against RPCV, hereby respond as follows:

## PRELIMINARY STATEMENT

1. WLG Defendants deny the allegations contained in Paragraph "1" of the Second Amended Complaint.

## PARTIES

2. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "2" of the Second Amended Complaint.

3. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "3" of the Second Amended Complaint.

4. WLG Defendants deny the allegations contained in Paragraph "4" of the Second Amended Complaint.

5. WLG Defendants deny the allegations contained in Paragraph "5" of the Second Amended Complaint.

6. WLG Defendants deny the allegations contained in Paragraph "6" of the Second Amended Complaint.

7. Paragraph 7 contains a definitional statement to which no response is required.

8. WLG Defendants deny knowledge or information sufficient to form a belief as to the allegations in Paragraph "8" of the Second Amended Complaint.

9. WLG Defendants admit that Christopher D. Warren is a citizen and resident of New Jersey, is an attorney admitted to practice in the States of New York and New Jersey, was the managing partner of Warren Law Group, and was a member of Scarinci Hollenbeck from January 1, 2024 through April 30, 2026; refer all conclusions of law in Paragraph "9" to the Court; and otherwise deny the allegations contained in Paragraph "9" of the Second Amended Complaint.

10. WLG Defendants admit that Scott J. Oh is a citizen and resident of Illinois, is an attorney admitted to practice in Illinois, practiced with Warren Law Group, and was of counsel to Scarinci Hollenbeck from approximately January 2024 to April 2024, and otherwise deny the allegations contained in Paragraph "10" of the Second Amended Complaint.

## JURISDICTION AND VENUE

11. Paragraph "11" calls for conclusions of law, to which no response is required. To the extent a response is required, WLG Defendants refer all issues of law and interpretation to the Court.

12. Paragraph "12" calls for conclusions of law, to which no response is required. To the extent a response is required, WLG Defendants do not dispute Plaintiffs' assertion of venue, but deny that they committed any act or omission giving rise to liability.

## FACTUAL BACKGROUND

13. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "13" of the Second Amended Complaint.

14. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "14" of the Second Amended Complaint.

15. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "15" of the Second Amended Complaint.

16. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "16" of the Second Amended Complaint.

17. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "17" of the Second Amended Complaint.

18. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "18" of the Second Amended Complaint.

19. WLG Defendants deny the allegations contained in Paragraph "19" of the Second Amended Complaint, except admit that the Non-Depletion Agreements (the "NDAs") referenced therein are written instruments that speak for themselves, respectfully refer the Court to the NDAs

for their true content and meaning, and aver that no WLG Defendant was a party to the NDAs. WLG Defendants deny Plaintiffs' characterization of the NDAs and any allegations inconsistent with their terms.

20. WLG Defendants deny the allegations contained in Paragraph "20" of the Second Amended Complaint, except admit that the NDAs are written instruments that speak for themselves, and respectfully refer the Court to the NDAs for their true content and meaning.

21. WLG Defendants admit that RPCV agreed to act as a Depositing Third Party under the NDAs and that the escrowed funds were wired by the Ronald Patrick Cameron Trust, and otherwise deny the allegations contained in Paragraph "21" of the Second Amended Complaint.

22. WLG Defendants admit that RPCV executed a Consent to Be Bound in the form of Exhibit I to each NDA, dated October 14 and October 17, 2023 and otherwise deny the allegations contained in Paragraph "22" of the Second Amended Complaint.

23. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "23" of the Second Amended Complaint.

24. WLG Defendants admit the allegations contained in Paragraph "24" of the Second Amended Complaint only to the extent that RPCV, CHRISTOPHER D. WARREN, P.C. ("CDW PC") and VERSITY INVEST, LLC entered into two Escrow Service Agreements, dated respectively October 14, 2023 and October 17, 2023, and respectfully refer the Court to such agreements for their terms. WLG Defendants further aver that "Warren Law Group" was the registered assumed name of CDW PC, and that neither Warren Law Group, LLP nor Warren Law Group, PLLC was a party to the Escrow Service Agreements.

25. WLG Defendants deny the allegations contained in Paragraph "25" of the Second Amended Complaint.

26. WLG Defendants deny the allegations contained in Paragraph "26" of the Second Amended Complaint, except admit that the Escrow Service Agreements are written instruments that speak for themselves, and respectfully refer the Court to the Escrow Service Agreements for their true content and meaning. WLG Defendants deny Plaintiffs' characterization of the Escrow Service Agreements and any allegations inconsistent with their terms.

27. WLG Defendants deny the allegations contained in Paragraph "27" of the Second Amended Complaint, except admit that Section I.2(a) of the Escrow Service Agreements is accurately quoted in part, and respectfully refer the Court to the Escrow Service Agreements for their true content and meaning. WLG Defendants deny Plaintiffs' characterization of the Escrow Service Agreements and any allegations inconsistent with their terms.

28. WLG Defendants deny the allegations contained in Paragraph "28" of the Second Amended Complaint.

29. WLG Defendants admit that Section I.3 of the Escrow Service Agreements provided for an escrow service fee of 0.25% of the amount deposited, payable by Versity Invest, LLC, and otherwise deny the allegations contained in Paragraph "29" of the Second Amended Complaint.

30. WLG Defendants deny the allegations contained in Paragraph "30" of the Second Amended Complaint.

31. WLG Defendants deny the allegations contained in Paragraph "31" of the Second Amended Complaint.

32. WLG Defendants deny the allegations contained in Paragraph "32" of the Second Amended Complaint.

33. WLG Defendants admit that on or about October 16, 2023, $10,000,000 was wired into the IOLA attorney trust account of CDW PC, and otherwise deny the allegations contained in Paragraph "33" of the Second Amended Complaint.

34. WLG Defendants admit that on or about October 19, 2023, $10,000,000 was wired into the IOLA attorney trust account of CDW PC, and otherwise deny the allegations contained in Paragraph "34" of the Second Amended Complaint.

35. Paragraph "35" of the Second Amended Complaint calls for conclusions of law, to which no response is required. To the extent a response is required, WLG Defendants deny knowledge or information sufficient to form a belief as to the allegations in Paragraph "35" of the Second Amended Complaint and refer all issues of law and interpretation to the Court.

36. WLG Defendants deny the allegations contained in Paragraph "36" of the Second Amended Complaint.

37. WLG Defendants deny the allegations contained in Paragraph "37" of the Second Amended Complaint.

38. WLG Defendants deny the allegations contained in Paragraph "38" of the Second Amended Complaint. WLG Defendants further aver that the Escrow Service Agreements required disbursement to the designated custodian upon receipt of Letters of Direction.

39. WLG Defendants admit that on October 24, 2023 CDW PC disbursed the escrowed funds to the designated custodian in accordance with the Letters of Direction and otherwise deny the allegations contained in Paragraph "39" of the Second Amended Complaint, including the characterization that the disbursement was made "at the direction of Mr. Warren and Mr. Oh."

40. WLG Defendants admit that the escrowed funds are not presently in the IOLA account because they were disbursed as set forth in response to Paragraph "39," and otherwise deny the allegations contained in Paragraph "40" of the Second Amended Complaint.

41. WLG Defendants admit the allegations contained in Paragraph "41" of the Second Amended Complaint to the extent that on or about December 8, 2023, two letters of attestation were provided by Scott J. Oh, and respectfully refer the Court to such letters for their true content and meaning. WLG Defendants deny any allegations inconsistent with the content and meaning of the letters.

42. WLG Defendants deny the allegations contained in Paragraph "42" of the Second Amended Complaint.

43. WLG Defendants deny the allegations contained in Paragraph "43" of the Second Amended Complaint.

44. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "44" of the Second Amended Complaint.

45. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "45" of the Second Amended Complaint.

46. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "46" of the Second Amended Complaint.

47. WLG Defendants admit that Christopher D. Warren was a member of Scarinci Hollenbeck from January 1, 2024 through April 30, 2026 and that Scott J. Oh became of counsel to Scarinci Hollenbeck, deny that Mr. Warren is presently a member of Scarinci Hollenbeck, and otherwise deny the allegations contained in Paragraph "47" of the Second Amended Complaint.

48. WLG Defendants deny the allegations contained in Paragraph "48" of the Second Amended Complaint.

49. WLG Defendants deny the allegations contained in Paragraph "49" of the Second Amended Complaint.

50. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "50" of the Second Amended Complaint.

51. WLG Defendants admit the allegations contained in Paragraph "51" of the Second Amended Complaint to the extent that on or about January 19, 2024, two letters of attestation were provided by Scott J. Oh, and respectfully refer the Court to such letters for their true content and meaning. WLG Defendants deny any allegations inconsistent with the content and meaning of the letters.

52. WLG Defendants admit that on or about January 19, 2024 Scott J. Oh transmitted two letters of attestation by email and that Mr. Cameron was copied on that email, respectfully refer the Court to the email for its true content and meaning, and otherwise deny the allegations contained in Paragraph "52" of the Second Amended Complaint.

53. WLG Defendants deny the allegations contained in Paragraph "53" of the Second Amended Complaint.

54. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "54" of the Second Amended Complaint.

55. WLG Defendants admit the allegations contained in Paragraph "55" of the Second Amended Complaint to the extent that on or about May 3, 2024, a letter of attestation was provided by Scott J. Oh, and respectfully refer the Court to such letters for their true content and meaning. WLG Defendants deny any allegations inconsistent with the content and meaning of the letters.

56. WLG Defendants deny the allegations contained in Paragraph "56" of the Second Amended Complaint.

57. WLG Defendants deny the allegations contained in Paragraph "57" of the Second Amended Complaint.

58. WLG Defendants deny the allegations contained in Paragraph "58" of the Second Amended Complaint.

59. WLG Defendants deny the allegations contained in Paragraph "59" of the Second Amended Complaint.

60. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "60" of the Second Amended Complaint.

61. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "61" of the Second Amended Complaint.

62. WLG Defendants admit that on or about August 6, 2024 Christopher D. Warren spoke with Seth Haines regarding the transferee on the October 24, 2023 wire transfer and otherwise deny the allegations contained in Paragraph "62" of the Second Amended Complaint.

63. WLG Defendants admit that, after reviewing the actual wire transfer records, Mr. Warren informed Mr. Haines on a subsequent call that he had been mistaken about the transferee of the escrowed funds that had been wired on October 24, 2023; and otherwise deny the allegations contained in Paragraph "63" of the Second Amended Complaint.

64. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "64" of the Second Amended Complaint.

65. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "65" of the Second Amended Complaint.

66. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "66" of the Second Amended Complaint.

67. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "67" of the Second Amended Complaint.

68. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "68" of the Second Amended Complaint.

69. WLG Defendants deny the allegations contained in Paragraph "69" of the Second Amended Complaint.

70. WLG Defendants deny the allegations contained in Paragraph "70" of the Second Amended Complaint.

## FIRST CLAIM
## BREACH OF CONTRACT

71. WLG Defendants respond to Paragraph "71" by repeating, reiterating, and reasserting all responses given in Paragraphs "1" through "70" with the same force and effect as if contained herein.

72. WLG Defendants deny the allegations contained in Paragraph "72" of the Second Amended Complaint.

73. WLG Defendants deny the allegations contained in Paragraph "73" of the Second Amended Complaint.

74. WLG Defendants deny the allegations contained in Paragraph "74" of the Second Amended Complaint.

75. WLG Defendants deny the allegations contained in Paragraph "75" of the Second Amended Complaint.

76. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "76" of the Second Amended Complaint.

77. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "77" of the Second Amended Complaint.

78. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "78" of the Second Amended Complaint.

79. WLG Defendants deny the allegations contained in Paragraph "79" of the Second Amended Complaint.

## SECOND CLAIM
## NEGLIGENCE

80. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligence claim is dismissed as against the WLG Defendants. No response is thus required.

81. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligence claim is dismissed as against the WLG Defendants. No response is thus required.

82. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligence claim is dismissed as against the WLG Defendants. No response is thus required.

83. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligence claim is dismissed as against the WLG Defendants. No response is thus required.

84. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligence claim is dismissed as against the WLG Defendants. No response is thus required.

85. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligence claim is dismissed as against the WLG Defendants. No response is thus required.

86. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligence claim is dismissed as against the WLG Defendants. No response is thus required.

87. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligence claim is dismissed as against the WLG Defendants. No response is thus required.

**THIRD CLAIM**
**BREACH OF FIDUCIARY DUTY**

88. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the breach of fiduciary duty claim is dismissed as against the WLG Defendants. No response is thus required.

89. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the breach of fiduciary duty claim is dismissed as against the WLG Defendants. No response is thus required.

90. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the breach of fiduciary duty claim is dismissed as against the WLG Defendants. No response is thus required.

91. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the breach of fiduciary duty claim is dismissed as against the WLG Defendants. No response is thus required.

92. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the breach of fiduciary duty claim is dismissed as against the WLG Defendants. No response is thus required.

93. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the breach of fiduciary duty claim is dismissed as against the WLG Defendants. No response is thus required.

94. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the breach of fiduciary duty claim is dismissed as against the WLG Defendants. No response is thus required.

95. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the breach of fiduciary duty claim is dismissed as against the WLG Defendants. No response is thus required.

**FOURTH CLAIM**
**CONVERSION**

96. WLG Defendants respond to Paragraph "96" by repeating, reiterating, and reasserting all responses given in Paragraphs "1" through "95" with the same force and effect as if contained herein.

97. WLG Defendants admit that the Trust deposited the escrowed funds into the IOLA attorney trust account of CDW PC, and otherwise deny the allegations contained in Paragraph "97" of the Second Amended Complaint.

98. WLG Defendants deny the allegations contained in Paragraph "98" of the Second Amended Complaint.

99. WLG Defendants deny the allegations contained in Paragraph "99" of the Second Amended Complaint.

100. WLG Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "100" of the Second Amended Complaint.

101. WLG Defendants deny the allegations contained in Paragraph "101" of the Second Amended Complaint.

102. WLG Defendants deny the allegations contained in Paragraph "102" of the Second Amended Complaint.

**<u>FIFTH CLAIM</u>**
**FRAUD**

103. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the fraud claim is dismissed as against the WLG Defendants. No response is thus required.

104. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the fraud claim is dismissed as against the WLG Defendants. No response is thus required.

105. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the fraud claim is dismissed as against the WLG Defendants. No response is thus required.

106. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the fraud claim is dismissed as against the WLG Defendants. No response is thus required.

107. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the fraud claim is dismissed as against the WLG Defendants. No response is thus required.

108. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the fraud claim is dismissed as against the WLG Defendants. No response is thus required.

109. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the fraud claim is dismissed as against the WLG Defendants. No response is thus required.

110. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the fraud claim is dismissed as against the WLG Defendants. No response is thus required.

111. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the fraud claim is dismissed as against the WLG Defendants. No response is thus required.

112. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the fraud claim is dismissed as against the WLG Defendants. No response is thus required.

**<u>SIXTH CLAIM</u>**
**NEGLIGENT MISREPRESENTATION**

113. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligent misrepresentation claim is dismissed as against the WLG Defendants. No response is thus required.

114. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligent misrepresentation claim is dismissed as against the WLG Defendants. No response is thus required.

115. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligent misrepresentation claim is dismissed as against the WLG Defendants. No response is thus required.

116. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligent misrepresentation claim is dismissed as against the WLG Defendants. No response is thus required.

117. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligent misrepresentation claim is dismissed as against the WLG Defendants. No response is thus required.

118. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligent misrepresentation claim is dismissed as against the WLG Defendants. No response is thus required.

119. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligent misrepresentation claim is dismissed as against the WLG Defendants. No response is thus required.

120. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligent misrepresentation claim is dismissed as against the WLG Defendants. No response is thus required.

121. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligent misrepresentation claim is dismissed as against the WLG Defendants. No response is thus required.

122. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligent misrepresentation claim is dismissed as against the WLG Defendants. No response is thus required.

123. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligent misrepresentation claim is dismissed as against the WLG Defendants. No response is thus required.

124. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the negligent misrepresentation claim is dismissed as against the WLG Defendants. No response is thus required.

## SEVENTH CLAIM
## MONEY HAD AND RECEIVED

125. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the money had and received claim is dismissed as against the WLG Defendants. No response is thus required.

126. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the money had and received claim is dismissed as against the WLG Defendants. No response is thus required.

127. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the money had and received claim is dismissed as against the WLG Defendants. No response is thus required.

128. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the money had and received claim is dismissed as against the WLG Defendants. No response is thus required.

129. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the money had and received claim is dismissed as against the WLG Defendants. No response is thus required.

130. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the money had and received claim is dismissed as against the WLG Defendants. No response is thus required.

131. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the money had and received claim is dismissed as against the WLG Defendants. No response is thus required.

## EIGHTH CLAIM
## UNJUST ENRICHMENT

132. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the unjust enrichment claim is dismissed as against the WLG Defendants. No response is thus required.

133. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the unjust enrichment claim is dismissed as against the WLG Defendants. No response is thus required.

134. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the unjust enrichment claim is dismissed as against the WLG Defendants. No response is thus required.

135. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the unjust enrichment claim is dismissed as against the WLG Defendants. No response is thus required.

136. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the unjust enrichment claim is dismissed as against the WLG Defendants. No response is thus required.

**NINTH CLAIM**
**BREACH OF IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING**

137. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the breach of implied covenants of good faith and fair dealing claim is dismissed as against the WLG Defendants. No response is thus required.

138. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the breach of implied covenants of good faith and fair dealing claim is dismissed as against the WLG Defendants. No response is thus required.

139. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the breach of implied covenants of good faith and fair dealing claim is dismissed as against the WLG Defendants. No response is thus required.

140. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the breach of implied covenants of good faith and fair dealing claim is dismissed as against the WLG Defendants. No response is thus required.

141. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the breach of implied covenants of good faith and fair dealing claim is dismissed as against the WLG Defendants. No response is thus required.

142. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the breach of implied covenants of good faith and fair dealing claim is dismissed as against the WLG Defendants. No response is thus required.

143. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the breach of implied covenants of good faith and fair dealing claim is dismissed as against the WLG Defendants. No response is thus required.

**TENTH CLAIM**
**ACCOUNTING**

144. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the accounting claim is dismissed as against the WLG Defendants. No response is thus required.

145. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the accounting claim is dismissed as against the WLG Defendants. No response is thus required.

146. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the accounting claim is dismissed as against the WLG Defendants. No response is thus required.

147. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the accounting claim is dismissed as against the WLG Defendants. No response is thus required.

148. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the accounting claim is dismissed as against the WLG Defendants. No response is thus required.

149. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the accounting claim is dismissed as against the WLG Defendants. No response is thus required.

150. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the accounting claim is dismissed as against the WLG Defendants. No response is thus required.

151. Pursuant to the Order of Hon. Paul A. Engelmayer, dated September 22, 2026, the accounting claim is dismissed as against the WLG Defendants. No response is thus required.

**AS AND FOR A FIRST AFFIRMATIVE DEFENSE**

152. The Second Amended Complaint fails to state a cause of action upon which relief can be granted.

**AS AND FOR A SECOND AFFIRMATIVE DEFENSE**

153. Plaintiffs' claims are barred, in whole or in part, by the provisions of the Escrow Service Agreement, pursuant to which RPCV expressly waived and released all claims except those based upon CDW PC's bad faith or undue negligence.

**AS AND FOR A THIRD AFFIRMATIVE DEFENSE**

154. Any damages sustained by Plaintiffs were caused by the acts or omissions of third persons or entities over whom the WLG Defendants exercised no control, including but not limited to, Varsity Financial Holdings, Varsity Management, Tyler Sannar, MME Martim LLC, and James William Byrd.

**AS AND FOR A FOURTH AFFIRMATIVE DEFENSE**

155. If Plaintiffs have sustained injuries as alleged in the Second Amended Complaint, such injuries were aggravated, exacerbated and/or exaggerated by Plaintiffs' failure to use reasonable diligence in mitigation.

**AS AND FOR A FIFTH AFFIRMATIVE DEFENSE**

156. Plaintiffs' claims are barred on the basis of the doctrine(s) of laches, unclean hands, waiver, and estoppel.

**AS AND FOR A SIXTH AFFIRMATIVE DEFENSE**

157. The disbursement of the escrowed funds on October 24, 2023 was consented to by RPCV and authorized by RPCV, as set forth in the Letters of Direction, the Business Expansion Line of Credit Agreements, Non-Depletion Agreements, Deposit Agreements and Consent to Be Bound, each of which contemplated that the deposited funds would be delivered to the custodian designated by Varsity Financial Holdings.

**AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE**

158. Plaintiffs' claims are barred, in whole or in part, by Sections I.2(d) and I.2(f) of the Escrow Service Agreements, pursuant to which the Escrow Agent was a depository only, was not responsible for the identity, authority, or rights of any person executing an instruction, and was entitled to rely conclusively upon, and is protected when acting upon, any instruction believed in good faith to be genuine, duly authorized, or properly made.

**AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE**

159. Upon delivery of the escrowed funds to the designated custodian, the Escrow Agent fully performed its obligations under the Escrow Service Agreements and was discharged.

**AS AND FOR A NINTH AFFIRMATIVE DEFENSE**

160. Any recovery by Plaintiffs must be reduced by all amounts recovered or recoverable from Versity Invest, LLC, Varsity Financial Holdings, MME Martim LLC, James William Byrd or his estate, or any other person, including in any arbitration or other proceeding, and by the equitable share of any settling tortfeasor pursuant to N.Y. General Obligations Law § 15-108.

**AS AND FOR A TENTH AFFIRMATIVE DEFENSE**

161. Any act of Scott J. Oh or Christopher D. Warren in connection with the Escrow Service Agreements was taken on behalf of the Escrow Agent in a representative capacity, and the Escrow Service Agreements provide that their execution did not create an attorney-client relationship with Plaintiffs.

**AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE**

162. The Ronald Patrick Cameron Trust's claims are barred, in whole or in part, due to a lack of standing and/or privity as the Ronald Patrick Cameron Trust was not a signatory or party to the Escrow Service Agreements, the Consent to Be Bound, the Deposit Notices, or any other agreement with the Escrow Agent and any claim of the Ronald Patrick Cameron Trust is derivative of RPCV's and subject to the defenses applicable to RPCV.

**AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE**

163. WLG Defendants reserve the right to assert additional affirmative defenses as may be disclosed in discovery.

**COUNTERCLAIMS**

164. Counterclaim Plaintiffs, CHRISTOPHER D. WARREN, P.C. d/b/a WARREN LAW GROUP ("CDW PC"), a New York professional service corporation voluntarily dissolved effective October 7, 2024, which pursuant to N.Y. Business Corporation Law § 1006 may sue and be sued on rights, claims and liabilities existing before its dissolution, SCOTT J. OH and CHRISTOPHER D. WARREN (hereinafter collectively referred to as "COUNTERCLAIM PLAINTIFFS") repeat and reallege the allegations set forth in their Answer to the Second Amended Complaint as though fully set forth herein.

165. This Court has supplemental jurisdiction over the counterclaims pursuant to 28 U.S.C. § 1367(a). The counterclaims arise out of the transaction and occurrence that is the subject matter of Plaintiffs' claims and are compulsory pursuant to Fed. R. Civ. P. 13(a).

166. These are counterclaims arising from RPCV's breach of the written Escrow Services Agreements pursuant to which it expressly agreed to indemnify, defend, release, and hold harmless Counterclaim Plaintiffs from any claims arising out of the Escrow Services Agreements annexed to the Second Amended Complaint as Exhibits "C" and "D".

167. Despite the contractual obligations, RPCV commenced and continues to maintain this litigation against Counterclaim Plaintiffs in violation of the Escrow Services Agreements.

168. As a result of RPCV's actions, Counterclaim Plaintiffs have incurred and continue to incur substantial attorneys' fees, litigation expenses, and costs, and face potential liability, all of which are within the scope of RPCV's indemnification, defense, and hold harmless obligations under the Escrow Service Agreements.

169. RPCV and CDW PC entered into two written Escrow Service Agreements (annexed to the Second Amended Complaint as Exhibits "C" and "D") which are both valid, binding, and enforceable.

170. At various times, SCOTT J. OH and CHRISTOPHER D. WARREN were "individuals acting on behalf of Escrow Agent" as set forth in the Escrow Services Agreements.

171. The Escrow Services Agreements define RPCV as one of the "Clients."

172. The Escrow Services Agreements define "Warren Law Group, a New Jersey Corporation" as the Escrow Agent.

173. The Escrow Services Agreements define "Parties" as Versity Invest, LLC, RPCV, and Warren Law Group.

174. Section II(b) of the Escrow Service Agreements provides that the Clients:

> "represent[ed], warrant[ed], and confirm[ed] that their participation in the contemplated transaction, is for lawful purposes only; and is not in any way, related to, or connected with, any nefarious activity, fraudulent or deceptive conduct, criminal act, money laundering, wire fraud, tax evasion, fraudulent conveyance, or any other bad faith or illegal act or conduct under any law, regulation, ordinance of any country or sovereign jurisdiction. Moreover, the Clients represent and warrant that the source(s) of the funds or assets/commodities are not subject to sanctions by the United States Office of Foreign Asset Control ("OFAC") or local equivalent. The Clients acknowledge and agree that the Escrow Agent has been induced into entering this Agreement by these re presentations of the Clients and, therefore, fully indemnify and hold harmless Escrow Agent for any and individuals acting on behalf of Escrow Agent, and/or in an individual capacity from and against any and all liabilities, damages, costs, relevant fines, penalties, and or demands imposed by any relevant jurisdiction, expenses and/or other losses (including reasonable attorney's fees) whatsoever which Escrow Agent may suffer by and from the illegal or nefarious actions of the Clients, or its employees, agents, heirs or assigns hired on its behalf.."

175. Section II(c) of the Escrow Service Agreements provides that RPCV agreed to:

> "indemnify, defend, and hold harmless Escrow Agent and individuals acting on behalf of Escrow Agent, and/or in an individual capacity from and against any and all liabilities, damages, costs, relevant taxes imposed by any relevant jurisdiction, expenses and/or other losses (including reasonable attorney's fees) whatsoever which Escrow Agent may suffer by and from the actions of either Party, or its employees, agents, heirs or assigns hired on its behalf, or any third party; including arbitration or litigation entered into on behalf of the Parties."

176. Section II(d) of the Escrow Services Agreements provide that RPCV agreed to:

> complete all necessary documents requested by Escrow Agent to aid in the disbursement of funds. The Clients certify that all information submitted to the Escrow Agent related to the provision of escrow services and the Escrow Agent's performance of its duties hereunder is accurate and truthful; and that the Escrow Agent may reasonably rely upon such information as accurate and truthful. The Clients hereby agree to indemnify and hold harmless the Esrow Agent from all claims, causes of action, charges, fees, or other liability accruing by reason of the Clients' failure to provide accurate and truthful information to the Escrow Agent.

177. Section II(h) of the Escrow Services Agreements provide that RPCV agreed as follows:

> The Clients acknowledge and agree that the Escrow Agent's undertaking of this engagement for escrow services, and any statements made by the Escrow Agent in respect of the Transaction, the Clients, and related third-parties, does not, and shall not be construed nor constitute in any manner, under any circumstances or interpretation, a recommendation, endorsement, opinion, representation, promise, warranty, nor guaranty with respect to of the Transaction (and related business dealings), and any outcome or result therefrom, or the Clients and or any third party related thereto. Except for bad faith or undue negligence by the Escrow Agent, the Clients hereby expressly waive, release, and hold harmless the Escrow Agent from all claims, fees, charges, causes of action, or other liability, potential or actual, that related to the underlying Transaction..

178. At all relevant times, CDW PC performed its obligations under the Escrow Services Agreements or was excused from further performance.

**<u>AS AND FOR A FIRST COUNTERCLAIM BY CDW PC FOR CONTRACTUAL INDEMNIFICATION AGAINST RPCV</u>**

179. CDW PC repeats and realleges the allegations and denials contained in the previous paragraphs as if fully set forth at length herein.

180. Pursuant to Section II(b) of the Escrow Service Agreements, the Clients:

> "represent[ed], warrant[ed], and confirm[ed] that their participation in the contemplated transaction, is for lawful purposes only; and is not in any way, related to, or connected with, any nefarious activity, fraudulent or deceptive conduct, criminal act, money laundering, wire fraud, tax evasion, fraudulent conveyance, or any other bad faith or illegal act or conduct under any law, regulation, ordinance of any country or sovereign jurisdiction."

181. Pursuant to Section II(b) of the Escrow Service Agreements, RPCV agreed to:

> "fully indemnify and hold harmless Escrow Agent . . . from and against any and all liabilities, damages, costs, relevant fines, penalties, and or demands imposed by any relevant jurisdiction, expenses and/or other losses (including reasonable attorney's fees) whatsoever which Escrow Agent may suffer by and from the illegal or nefarious actions of the Clients, or its employees, agents, heirs or assigns hired on its behalf.."

182. Upon information and belief, Versity Invest, LLC and Varsity Financial Holdings, the parties to the Business Expansion Line of Credit Agreements and Non-Depletion Agreements by which RPCV agreed to be bound, caused the escrowed funds, after their delivery by the Escrow Agent to the custodian designated by Varsity Financial Holdings, to be transferred to a trading account and not held in the Interest Reserve Account as the Non-Depletion Agreements required.

183. The foregoing conduct constitutes “fraudulent or deceptive conduct” or “other bad faith” within the meaning of Section II(b) of the Escrow Service Agreements.

184. RPCV’s claims in this action arise from that conduct.

185. Pursuant to Section II(b) of the Escrow Service Agreements, RPCV is contractually obligated to “fully indemnify and hold harmless” CDW PC “from and against any and all liabilities, damages, costs, relevant fines, penalties, and or demands imposed by any relevant jurisdiction, expenses and/or other losses (including reasonable attorney’s fees).”

186. CDW PC has incurred and continues to incur attorney’s fees and costs related to defending the claims asserted by RPCV in this action.

187. As such, RPCV must reimburse CDW PC for all of its attorney’s fees and costs in this action.

188. As such, RPCV will be required to indemnify CDW PC and hold it harmless for any judgment that RPCV obtains in this action.

**AS AND FOR A SECOND COUNTERCLAIM BY CDW PC FOR CONTRACTUAL INDEMNIFICATION AGAINST RPCV**

189. CDW PC repeats and realleges the allegations and denials contained in the previous paragraphs as if fully set forth at length herein.

190. Section II(c) of the Escrow Service Agreements provides that RPCV agreed to:

> "indemnify, defend, and hold harmless Escrow Agent . . .from and against any and all liabilities, damages, costs, relevant taxes imposed by any relevant jurisdiction, expenses and/or other losses (including reasonable attorney's fees) whatsoever which Escrow Agent may suffer by and from the actions of either Party, or its employees, agents, heirs or assigns hired on its behalf, or any third party; including arbitration or litigation entered into on behalf of the Parties."

191. RPCV commenced and continues to pursue this litigation.

192. The Trust is not a party to the Escrow Service Agreements and is therefore a "third party" within the meaning of Section II(c) of the Escrow Service Agreements.

193. The Trust has joined RPCV as a plaintiff in this action and asserts claims against CDW PC arising from the same escrowed funds and the same Transaction.

194. Versity Invest, LLC is a "Party" to the Escrow Service Agreements, and Plaintiffs' claims in this action arise from the actions of Versity Invest, LLC and its agents, as alleged above.

195. The liabilities, damages, costs, expenses, and attorney's fees that CDW PC has incurred and may incur in this action, including in defending the claims asserted by the Trust, are losses that CDW PC has suffered and may suffer "by and from the actions of either Party . . . or any third party" within the meaning of Section II(c) of the Escrow Service Agreements.

196. CDW PC has incurred and continues to incur attorney's fees and costs related to defending the claims asserted by RPCV in this action.

197. As such, RPCV must reimburse CDW PC for all of its attorney's fees and costs in this action.

198. As such, RPCV will be required to indemnify CDW PC and hold it harmless for any judgment that RPCV obtains in this action.

**AS AND FOR A THIRD COUNTERCLAIM BY CDW PC FOR CONTRACTUAL INDEMNIFICATION AGAINST RPCV**

199. CDW PC repeats and realleges the allegations and denials contained in the previous paragraphs as if fully set forth at length herein.

200. Section II(d) of the Escrow Services Agreements provides that:

> The Clients certify that all information submitted to the Escrow Agent related to the provision of escrow services and the Escrow Agent's performance of its duties hereunder is accurate and truthful; and that the Escrow Agent may reasonably rely upon such information as accurate and truthful. The Clients hereby agree to indemnify and hold harmless the Escrow Agent from all claims, causes of action, charges, fees, or other liability accruing by reason of the Clients' failure to provide accurate and truthful information to the Escrow Agent.

201. Upon information and belief, Versity Invest, LLC failed to provide accurate and truthful information to CDW PC concerning the Transaction, including the identity and authority of the persons who would issue Letters of Direction and the nature of the Custodian Account to which the escrowed funds were to be delivered.

202. As a result, RPCV must reimburse CDW PC for all of its attorney's fees and costs in this action.

203. As such, RPCV will be required to indemnify CDW PC and hold it harmless for any judgment that RPCV obtains in this action.

**AS AND FOR A FOURTH COUNTERCLAIM BY CDW PC FOR CONTRACTUAL INDEMNIFICATION AGAINST RPCV**

204. CDW PC repeats and realleges the allegations and denials contained in the previous paragraphs as if fully set forth at length herein.

205. Section II(h) of the Escrow Services Agreements provide that RPCV agreed that:

> Except for bad faith or undue negligence by the Escrow Agent, the Clients hereby expressly waive, release, and hold harmless the Escrow Agent from

> all claims, fees, charges, causes of action, or other liability, potential or actual, that related to the underlying Transaction..

206. At all relevant times, CDW PC performed its obligations under the Escrow Services Agreements.

207. Plaintiffs' claims for negligence, breach of fiduciary duty, fraud, and negligent misrepresentation have been dismissed, and no claim of bad faith or undue negligence has been sustained against CDW PC.

208. As such, RPCV must hold CDW PC harmless for all of its attorney's fees and costs incurred in this action as well as any judgment RPCV obtains against CDW PC.

**AS AND FOR A FIFTH COUNTERCLAIM BY SCOTT OH AND CHRISTOPHER WARREN FOR CONTRACTUAL INDEMNIFICATION AGAINST RPCV**

209. Scott J. Oh and Christopher D. Warren repeat and reallege the allegations and denials contained in the previous paragraphs as if fully set forth at length herein.

210. Section II(c) of the Escrow Service Agreements provides that RPCV agreed to:

> "indemnify, defend, and hold harmless Escrow Agent and individuals acting on behalf of Escrow Agent, and/or in an individual capacity from and against any and all liabilities, damages, costs, relevant taxes imposed by any relevant jurisdiction, expenses and/or other losses (including reasonable attorney's fees) whatsoever which Escrow Agent may suffer by and from the actions of either Party, or its employees, agents, heirs or assigns hired on its behalf, or any third party; including arbitration or litigation entered into on behalf of the Parties."

211. To the extent Scott J. Oh and/or Christopher D. Warren engaged in any acts related to the Escrow Service Agreements, said acts were rendered "on behalf of Escrow Agent" and/or "in an individual capacity" within the meaning of Section II(c) of the Escrow Service Agreements.

212. As a result, RPCV must reimburse Scott J. Oh and Christopher D. Warren for all of their attorney's fees and costs in this action.

213. As such, RPCV is required to indemnify Scott J. Oh and Christopher D. Warren and hold them harmless for any judgment that RPCV obtains in this action.

**AS AND FOR A SIXTH COUNTERCLAIM BY CDW PC, SCOTT OH AND CHRISTOPHER WARREN FOR DECLARATORY JUDGMENT**

214. Counterclaim Plaintiffs repeat and reallege the preceding paragraphs of their Answer and Counterclaims as if set forth in their entirety.

215. An actual controversy exists between the parties concerning the interpretation and enforcement of the Escrow Service Agreement.

216. Counterclaim Plaintiffs contend that RPCV is obligated to indemnify, defend, and hold harmless Counterclaim Plaintiffs with respect to the pending claims in the Second Amended Complaint.

217. RPCV disputes those obligations.

218. Counterclaim Plaintiffs seek a declaration that:

a. the Escrow Services Agreements are valid and enforceable;

b. RPCV is obligated to indemnify Counterclaim Plaintiffs;

c. RPCV is obligated to reimburse all attorneys' fees, costs, and expenses incurred by Counterclaim Plaintiffs; and

d. RPCV is obligated to defend Counterclaim Plaintiffs against any future claims arising from the Escrow Services Agreements.

## PRAYER FOR RELIEF

**WHEREFORE, WLG Defendants respectfully pray for judgment as follows:**

(i) Dismissing the Second Amended Complaint in its entirety, with prejudice;

(ii) granting judgment to the Counterclaim Plaintiffs on their counterclaims against RPCV, including the declaratory relief sought in the Sixth Counterclaim, in an amount to be determined at trial;

(iii) awarding the Counterclaim Plaintiffs their attorney's fees, costs and disbursements in this action pursuant to Sections II(b), II(c), II(d) and II(h) of the Escrow Service Agreements; and

(iv) such other and further relief as this Court deems just, equitable, and proper.

Dated: October 15, 2026
Woodbury, New York

**KAUFMAN DOLOWICH LLP**

Digitally signed by: Brett A. Scher
DN: CN = Brett A. Scher email = bscher@kaufmandolowich.com C = US O = Kaufman Dolowich LLP
Date: 2026.10.15 15:20:19 -05'00'

By: ______________________
Brett A. Scher, Esq.
*Attorneys for Defendants and Counterclaim Plaintiffs*
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
T: (516) 681-1100
E: bscher@kaufmandolowich.com